CHARLES K. HAWKES *vs.* WILLIAM H. REMINGTON & others.

Whether the specifications of two patents, not in the same terms, describe the same invention, is a question of fact for the jury.

TORT for falsely representing that letters patent held by the defendants for plating with nickel gave a valid patent right, and that no letters patent for plating with nickel had been before issued, and thereby inducing the plaintiff to pay $2500 for an assignment of said letters patent; whereas said letters patent did not give a valid patent right, and letters patent for plating with nickel had before been issued.

At the trial in the Superior Court, before *Reed*, J., the plaintiff contended that the letters patent assigned to him by the defendants were for the same invention for which letters patent had previously issued to Isaac Adams, Jr., and were therefore worthless.

The specifications of the defendants' patent and of the Adams patent were introduced in evidence,* and the plaintiff asked the

---

* The specification of the defendants' patent was as follows:

" To all whom it may concern : Be it known that I, William H. Remington, of Boston, in the county of Suffolk, and State of Massachusetts, have invented a process for electro-plating with nickel, of which the following is a clear, full, and exact description, reference being had to the accompanying drawings, making part of this specification, in which figure 1 is a perspective view of the apparatus which I employ in the process of electro-plating with nickel. Figure 2 is a transverse vertical section through the same. Figure 3 is a plan of the vat containing the solution, the bottom being provided with a lining, to be hereafter referred to. Figure 4 is a longitudinal vertical section, on the line *x x* of fig. 3. Figure 5 represents a plate coated with nickel, to be used as a 'positive electrode.'

" The employment of nickel as a substitute for silver, in the process of electro-plating, presents many great advantages, the principal of which are that nickel is extremely hard, and susceptible of a high polish, while it will not become tarnished by age or exposure to the air. It will also withstand the action of intense heat, as it cannot be readily fused by fire, and, furthermore, its cost is trifling compared with that of silver. It has, however, hitherto been found impossible to practically employ nickel, for the reason that it can only be obtained in small particles, and cannot, on account of its infusibility, be

judge to rule " that the defendants' patent covered, by its terms, the electro-plating, with nickel, all articles of metal which might

---

formed into a plate for a positive electrode, as is required to present the necessary amount of surface; while, if the attempt is made to fuse it with copper, or other metal for which it has an affinity, the plate so formed would be unfit for use, as the deposit would not be pure, and the desired result could not be attained.

" My invention has for its object to overcome these difficulties, and to enable me to successfully employ nickel in the process of electro-plating, and consists, firstly, in suspending or supporting a mass of the particles of nickel within the solution, so as to present an extended surface, and connecting them with the positive pole of the battery by means of platinum, or other suitable conductor of electricity, not materially affected by the electric current or the solution employed. The second part of my invention consists in lining the whole or a portion of the interior of the vat or vessel which contains the solution with carbon, or other suitable conductor of electricity not materially affected by the electric current or solution, so that the particles of nickel, instead of being suspended or supported, as above described, may be placed upon the lining at the bottom of the vat in such a manner as to present the desired surface, the lining of the vat being connected with the positive pole of the battery. The third part of my invention consists in the employment of a plate of metal, carbon, or other conductor of electricity, upon which a coat of nickel of sufficient thickness shall have been deposited, as a positive electrode, to be suspended in the ordinary manner, and connected with the positive pole of the battery, instead of suspending or supporting the particles of nickel, or placing them upon the bottom of the vat, as above described. The fourth part of my invention consists in a new and improved solution to be used in the process of electro-plating with nickel.

" To enable others skilled in the art to understand and use my invention, I will proceed to describe the manner in which I have carried it out. In the said drawings, A represents the vat or receptacle for containing the solution. B is a battery, the positive pole of which is connected, by means of the wire *a* and screw-cups, *b c*, with a metallic rod, C, the extremities of which rest in grooves in the upper edges of the vat A. The negative pole of the battery is connected, by means of a wire, *d*, and screw-cups, *e f*, with a rod, D, placed at the opposite end of the vat, and from this rod the 'negative electrodes,' or articles to be coated, are suspended in the solution by wires, in the ordinary manner.

" I will now describe the manner in which the particles of nickel which form the positive electrode are suspended or supported in the solution or bath, so as to present the extended surface necessary to produce the required result. E is a basket or receptacle, composed of woven platinum wire, and suspended from

have been plated or covered by electro-plating process under the Adams patent ; " the judge so ruled, and, after a verdict for the

the rod C by means of platinum wires, *g*. Within this wire basket, E, are placed the particles of nickel, the mass of nickel thus suspended in the solution, and forming the positive electrode, presenting an extended surface to the action of the electric current and solution, and from this surface the nickel will be readily thrown down, and deposited upon the negative electrodes suspended from the rod D. I do not, however, confine myself to the use of platinum for the purpose of suspending or supporting the particles of nickel, as any other suitable conductor of electricity, not materially affected by the electric current or the solution employed, may be used instead; neither do I confine myself to the use of a wire basket or receptacle for containing the nickel, as it may be suspended in some other manner, so as to present the desired surface.

" Instead of suspending the particles of nickel within the solution, as above described, they may be placed on the bottom of the vat, which, in such case, is to be covered or lined with carbon, G, the carbon lining, being provided with a post or standard *h*, of the same material, having a screw-cup, *i*, at its upper extremity, by which it is to be connected with the positive pole of the battery, the electric current being by this means connected with the nickel, which may be thickly spread over the bottom of the vat, so as to present an extended surface, as required. Instead of a post *h*, extending up from the lining G, the side or sides, as well as the bottom of the vat, may be lined with carbon, the lining being connected, at any suitable point, with the positive pole of the battery. Or, instead of the above, a shelf of carbon, connected with the positive pole of the battery, may project out from the side of the vat, and the nickel be spread thereon, in which case the lining, G, at the bottom of the vat, will not be required; and in lieu of carbon, any other suitable conductor of electricity, not materially affected by the electric current or the solution employed, may be used, if preferred, as a lining or surface upon which to spread the particles of nickel; or the entire vat, or any portion thereof, may be composed of platinum, carbon, or other conductor of electricity, not materially affected by the electric current or solution.

" Instead of suspending the particles of nickel from the rod C, or otherwise supporting them, as above described, a plate of metal, carbon, or other conductor of electricity, upon which a coat of nickel of sufficient thickness shall have been deposited, may be employed as a positive electrode, the plate H, so coated, being suspended from the rod C, and connected with the positive pole of the battery, so that the nickel may be thrown down or deposited from this plate in the same manner as from a plate of silver or other metal, care being taken to remove the plate before its coating of nickel has become exhausted.

" In the above-described process, I prefer to first employ a strong current of electricity for ' striking ' or ' whitening,' similar to that employed in the process

plaintiff, reported the case for the consideration of this court. If the ruling was correct, the verdict to stand; otherwise a new trial to be granted. .

of electro-plating with silver. The solution which I employ, and which I have ascertained to induce the best results, is made in the following manner: I take refined nickel, and dissolve it in nitric acid slightly diluted with water, say about one twentieth part of the latter, adding the liquid to the nickel by degrees until it is entirely dissolved. The nickel is then precipitated by the addition of a suitable quantity of carbonate of potash. The precipitate thus obtained is then thoroughly washed with pure water, after which it is dissolved in a strong solution of sal ammoniac and filtered, when it will be ready for use. I do not, however, confine myself to the use of the above described solution, as other solutions of nickel may be employed instead.

" By means of the process above described, I am enabled to effect a perfect deposition of nickel upon the negative electrode, or article to be coated, in a simple, expeditious, and inexpensive manner, which has been a desideratum hitherto unattained; and by thus overcoming the difficulties hitherto experienced, I am enabled to extensively employ nickel in the process of electroplating, the peculiar properties of this metal, viz., extreme hardness, and consequent length of wear, susceptibility of high polish, freedom from liability to tarnish, power to withstand intense heat, and trifling cost compared with that of silver, rendering it eminently useful and of great value for all general purposes, and especially as a substitute for silver, which, as it can only be deposited in a pure state, is necessarily soft and consequently liable to abrasion and rapid wear, besides being extremely liable to become tarnished.

" What I claim as my invention, and desire to secure by letters patent, is

" Suspending or supporting or holding a mass of the particles of nickel within the solution, so as to present an extended surface, and connecting them with the positive pole of the battery by means of platinum, or other suitable conductor of electricity, not materially affected by the electric current or the solution employed, substantially as described.

" Also claim a positive electrode, composed of a plate of metal, carbon, or other conductor of electricity, upon which a coat of nickel of sufficient thickness shall have been deposited, substantially as set forth.

" Also claim the within-described solution, prepared of the ingredients, and 'n a manner substantially as described.

" Also claim a substance, coated or plated with nickel, as herein set forth as a new article of manufacture."

The specification of the Adams patent was as follows:

" To all whom it may concern: Be it known that I, Isaac Adams, Jr., of Boston, in the county of Suffolk and State of Massachusetts, have invented an improvement in coating metals with metal, and I do hereby declare that the

*J. Nickerson*, for the defendants.

*T. H. Sweetser & W. S. Gardner*, for the plaintiff.

GRAY, J.  The identity of the inventions described in the two patents does not appear upon their face, without the assistance of the testimony of experts, and should have been submitted to the jury.  *Battin* v. *Taggert*, 17 How. 74.  *Bischoff* v. *Wethered*, 9 Wall. 812.  *Hill* v. *Evans*, 4 De G., F. & J. 288.  *Betts* v. *Menzies*, 10 H. L. Cas. 117.  *New trial ordered.*

---

following is a description of my invention sufficient to enable those skilled in the art to practise it.  This invention relates to surfacing metal articles which are to be subjected to flame, and which, by the action of such flame, are easily corroded with a coating or deposit of anti-corrosive metal which will practically prevent the oxidizing action of heat and flame.  The principal object of my invention is the protection of ' gas tips ' or burners from oxidation.  It is well known that the action of the flame upon common gas burners soon impairs their orifices by oxidation, and the deposit of oxide upon the surfaces against which the flame acts, and I have practically demonstrated that, by coating such surfaces with a thin deposit of nickel, the heat and flame have no detrimental effect upon the tips, the orifice being kept entirely free from deposit of oxide, causing the flame to burn with undiminished lustre.  Other metallic articles subjected to about the same degree of heat, such as common fluid lamp burners, may be thus treated with similar beneficial results.

"My invention consists, therefore, in coating or surfacing gas tips, or other similar articles, with a deposit of nickel to render them anti-corrosive by heat, or in such articles so coated.  From the cheapness and ease of application of nickel by electro-plating or otherwise, and the protection which the coating imparts, it will be obvious that this invention is of great practical utility.  The corrosion of the surfaces of metal articles is also affected by moisture of the atmosphere; but the coating of nickel is a practical protection against corrosion, whether induced by heat or by moisture, or by both.

" I claim rendering gas tips and other similar articles anti-corrosive to heat or moisture by surfacing them with nickel substantially as set forth."